J-S39041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| J.T. | : | |
| | : | |
| Appellant | : | No. 1720 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 7, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009744-2017

BEFORE:  LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:              **FILED SEPTEMBER 21, 2020**

In related cases, J.T. (J.T.) appeals from the judgment of sentence imposed following his conviction in the Court of Common Pleas of Philadelphia County (trial court) of two counts each of unlawful contact with a minor, endangering the welfare of a child, corruption of a minor, aggravated indecent assault of a person less than 13 years of age, rape of a child and involuntary

_____

[*] Retired Senior Judge assigned to the Superior Court.

deviate sexual intercourse[1] at docket numbers CP-51-CR-0009744-2017 and CP-51-CR-0009745-2017.[2] We affirm.

**I.**

J.T.'s conviction arises from his long-term sexual abuse of his two biological daughters, M.T. and L.T. The victims' testimony at trial showed that they lived with J.T. and their three brothers for seven years after they were removed from the care of their mother because of physical abuse in her home. At J.T.'s residence, M.T. and L.T shared a bedroom, their brothers shared a second bedroom and J.T. slept in the main bedroom. M.T. testified that her father repeatedly raped her starting from when she was eight or nine years old until she was 14 years old. M.T. described the first sexual encounter as happening in J.T.'s bedroom while her siblings were asleep. J.T. touched her breasts and vagina before performing oral sex on her and anally penetrating her. J.T. continued to rape her multiple times per month over the course of several years in his bedroom with the door closed while her siblings were asleep or out of the house. M.T. explained that she did not tell anyone about

_____

[1] 18 Pa.C.S. §§ 6318, 4304, 6301, 3125(a)(7), 3121(c) and 3123, respectively.

[2] Initials are used to denote the names of most of the individuals in this Memorandum to protect the identity of the minor children. **See** Superior Court I.O.P. 424(A). We have issued a nearly identical Memorandum at Journal No. J-S39042-20, as the appeals raise the same issues and the trial court filed one opinion at both docket numbers.

the abuse for a long time because she was "scared and embarrassed" and was afraid that "[J.T.] would do something to me." (N.T. Trial, 1/23/19, at 58, 62). M.T and L.T. eventually told their two older sisters about the abuse, who assisted them in reporting it to police and moving from J.T.'s home.

L.T. testified that J.T. raped her "about two times a week, . . . sometimes more," from the time she was nine years old until she was 12 years old. (**Id.** at 117, 119, 127). During these episodes, J.T. performed oral sex on her and anally penetrated her. L.T. explained regarding the first incident: "I went downstairs because I couldn't sleep and he started touching me and said he wouldn't hurt me, but he did. And he put his penis in my butt and he told me that if anything hurt to tell him, that he wouldn't hurt me, so I told him that it hurted [sic] and he stopped." (**Id.** at 120). L.T. testified that J.T occasionally digitally penetrated her vagina and that he performed oral sex on her "a lot." She explained: "I would be watching T.V. and he would lay me down on the bed and pull down my pants and suck my vagina." (**Id.** at 125, 127). L.T. described an instance on her twelfth birthday wherein she went to the basement to help J.T. with laundry and he gave her a 20-dollar bill and anally raped her on the washing machine. (**See id.** at 137). J.T. generally did not talk during the incidents, other than to tell her "not to tell anyone." (**See id.** at 131). L.T. complied with this directive because she felt scared and embarrassed. (**See id.** at 125). She explained that her father abused her when her brothers were either sleeping or riding their bikes. (**See id.** at 136).

M.T. and L.T.'s older sisters testified that they first learned of the abuse in August 2017 when the four sisters met at their mother's house.[3] (***See id.*** at 162, 164, 204). Sister 1 testified that M.T. and L.T. were "crying and were shaken up" when they disclosed the abuse and "it was pretty hard for them to even say what was going on." (***Id.*** at 164). When M.T. and L.T. calmed down enough to speak, they both explained that J.T. was raping them. (***See id.*** at 166). Sister 2 described their demeaner as "really shaken up" and "scared." (***Id.*** at 205). She recounted that they were "crying but didn't want to speak" and that she "could tell something was wrong just by looking at them." (***Id.***). Sisters 1 and 2 immediately took M.T. and L.T. to the police station to report the abuse. (***See id.*** at 206-07).

Dr. Marita Lind, a child abuse pediatrician and director of the Child Protection Program at St. Christopher's Hospital for Children, testified regarding her medical examinations of M.T. and L.T. M.T. and L.T. had progressed through puberty and were mature in their genital and anal exams. (***See*** N.T. Trial, 1/25/19, at 17, 22, 31). Dr. Lind did not observe signs of physical trauma, but opinioned that "lack of trauma is still consistent with a child alleging anal penetration." (***Id.*** at 24; ***see id.*** at 31). She explained

---

[3] Because the two older sisters share the same initials as one of the victims, M.T., we will refer to them as Sister 1 and Sister 2. We will likewise refer to the two brothers who testified at trial as Brother 1 and Brother 2 because of issues with shared initials.

"most children who experience anal penetration or mature children who experience vaginal penetration don't have physical signs of trauma after about 72 hours of contact because most trauma that you experience [in] those areas is superficial, superficial abrasion, superficial bruising and the blood supply to this area is really good. So the healing is rapid." (*Id.* at 24). Dr. Lind stated her medical opinion that "no trauma [is] consistent with sexual penetration." (*Id.* at 26).

Brothers 1 and 2 testified that they had no knowledge of any sexual abuse in the home and they first learned of the allegations when M.T. and L.T. moved out of the house. (*See id.* at 60, 85-87). They also indicated that Brother 2 slept in J.T.'s bedroom during the last two or three years he lived with his father, although he did not have his own bed in the room and slept on the floor. (*See id.* at 57, 72-73, 81).

The trial court held a jury trial on both docket numbers on January 23-25, 2019, and the jury found J.T. guilty of the above-listed charges. On June 7, 2019, the trial court sentenced J.T. to a term of not less than 37 nor more than 74 years' incarceration, followed by ten years of probation.[4] The court also ordered J.T. to comply with all Tier III registration requirements under

---

[4] The trial court imposed an identical sentence at Docket No. CP-51-CR-0009745-2017, resulting in an aggregate term of not less than 74 nor more than 148 years' incarceration, followed by 20 years of probation. (*See* Superior Court Memorandum issued at Journal No. J-S39042-20).

Pennsylvania's Sexual Offender Registration and Notification Act (SORNA), including lifetime registration with the Pennsylvania State Police.[5] J.T. timely appealed and he and the trial court complied with Rule 1925. **See** Pa.R.A.P. 1925 (a)-(b).

## II.

J.T. first challenges the sufficiency of the evidence supporting his conviction.[6] J.T. generally disputes every element of all of the offenses he

---

[5] **See** 42 Pa.C.S. §§ 9799.10-9799.41. SORNA's effective date is December 20, 2012, and it classifies offenders and their offenses into three tiers according to the severity of the crime. **See Commonwealth v. Lacombe**, 2020 WL 4148262, at *5 (Pa. filed July 21, 2020). "Those convicted of Tier III offenses are subject to lifetime registration and are required to verify their registration information and be photographed, in person at an approved registration site, quarterly." **Id.** at *6.

[6] In **Commonwealth v. Widger**, 2020 WL 4692334, at *2 (Pa. Super. filed Aug. 13, 2020) (citations omitted):

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test,

was found guilty of by contending that he lacked the opportunity to commit the abuse where his large family lived in cramped living conditions in a small home. J.T. maintains that he could not have engaged in such pervasive acts in the house without another family member knowing about it. In an overlapping argument, J.T. specifically challenges his convictions of aggravated indecent assault and rape of a child, pointing to the lack of corroborating physical evidence of signs of trauma on his daughters to establish the elements of penetration and intercourse.

A defendant commits aggravated indecent assault of a person less than 13 years of age when he "engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S. § 3125(a)(7). A person commits the offense of rape of a child when he "engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3121(c).

In order for the Commonwealth to establish the elements of a sexual offense, it is well-settled that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant." ***Commonwealth v.***

---

the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier-of-fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005); *see also* 18 Pa.C.S. § 3106 ("The credibility of a complainant of an offense under this chapter [relating to sexual offenses] shall be determined by the same standard as is the credibility of a complainant of any other crime. The testimony of a complainant need not be corroborated in prosecutions under this chapter."

Instantly, both M.T. and L.T. testified that their father abused them when other family members were either asleep or out of the home. They described in detail the ordeal of their abuse, starting when they were each about nine years old and lasting for several years. M.T. and L.T. explained that the incidents consisted primarily of J.T. performing oral sex on them and anally raping them several times per month and, in L.T.'s case, multiple times per week. Both sisters maintained that they did not inform anyone about the abuse because they were embarrassed and were afraid of J.T. Sisters 1 and 2 testified that M.T. and L.T. disclosed the abuse while shaken, crying and visibly frightened.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that it presented sufficient evidence to support J.T.'s convictions. The jury, as fact-finder, heard and weighed the testimony regarding the lack of corroborating physical evidence and the brothers' testimony that they were unaware of any abuse and was nonetheless free to credit M.T. and L.T.'s testimony that their father sexually abused them on a regular basis when their siblings were asleep or not at home.

Additionally, the detailed descriptions given by M.T. and L.T. of J.T.'s oral contact on their genitalia and of J.T. "putting his penis in [their] butt[s]" was clearly sufficient to establish the elements of penetration and intercourse for the aggravated indecent assault and rape convictions. (N.T. Trial, 1/23/19, at 54). The Commonwealth did not need to present any additional testimony to support M.T. and L.T.'s painstaking accounts of the abuse, as a victim's uncorroborated testimony alone can provide sufficient evidence to establish sexual assault. Further, as to J.T.'s claim regarding the lack of physical evidence of abuse, Dr. Lind explained that most children do not show signs of physical trauma after 72 hours of an anal assault, and the lack of physical evidence was entirely consistent with and in no way undermined the accounts of abuse. (*See* N.T. Trial, 1/25/19, at 24, 31). Based on the forgoing, we conclude J.T.'s sufficiency claims lack merit.

## III.

J.T. next challenges the legality of his sentence by arguing that his lifetime registration requirement imposed pursuant to SORNA is unconstitutional.[7] J.T. contends that SORNA is punitive because it impinges on his reputation and that it violates due process and the *ex post facto* clause. J.T. acknowledged in his appellate brief that the issue of SORNA's validity was

_____

[7] Because this claim presents a question of law, our scope of review is plenary and we review the trial court's legal determination *de novo*. **See Lacombe**, **supra** at *3.

then pending before the Pennsylvania Supreme Court, and he briefly addressed this issue in order to preserve it in the event the Court struck down the statute as unconstitutional.

After J.T. filed his brief in this Court, our Supreme Court issued **Lacombe**, **supra**, in which it upheld the constitutionality of SORNA. After exhaustive review, it determined that SORNA registration requirements are a civil remedy at their core and do not constitute criminal punishment. **See id.** at *1, 17-18.

Further, we agree with the trial court that J.T.'s retroactivity argument fails and he is plainly subject to SORNA registration requirements because his abuse of M.T. occurred from approximately 2011 through 2017 and of L.T from 2014 through 2017, well after SORNA's 2012 effective date. (**See** Trial Court Opinion, 12/31/19, at 9-10). J.T.'s challenge to the legality of his sentence merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/20